**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF VIRGINIA**
**LYNCHBURG DIVISION**

| | | |
|---|---|---|
| In re MINOR FAMILY HOTELS, LLC, | ) | Case No. 10-62543-LYN |
| Debtor. | ) | |
| SPECIALTY FINANCE GROUP, LLC, | ) | Adv. No. 10-06112 |
| Plaintiff, | ) | |
| v. | ) | |
| MINOR FAMILY HOTELS, LLC and HALSEY MINOR, | ) | |
| Defendants and Third Party Plaintiffs, | ) | |
| v. | ) | |
| HOTEL CHARLOTTESVILLE, LLC and LEE DANIELSON, | ) | |
| Third Party Defendants, | ) | |

## MEMORANDUM ON MOTION TO REMAND

This matter comes before this Court on a motion by Minor Family Hotels, LLC ("the Debtor") for a stay of an order of this court ("the Remand Order") remanding the above-styled adversary proceeding ("Adversary 10-06112") to the State Court of Fulton County, State of Georgia ("The Fulton County Court"). Specialty Financing Group, LLC ("the Lender") opposes the motion.

1

The motion will be denied.

*Jurisdiction*

This Court has jurisdiction over this matter. 28 U.S.C. § 1334(a) & 157(a). This proceeding is a core proceeding. 28 U.S.C. § 157(b)(2)(A). This Court may enter a final order. This memorandum shall constitute the Court's findings of fact and conclusions of law as required by Fed. R. Civ. P. 52, which is made applicable in this proceeding by Fed. R. Bankr. P. 7052.

*Facts*

In or about 2005, Hotel Charlottesville, LLC, ("the Developer") began a project to build a hotel ("the Hotel") on the downtown mall in Charlottesville, Virginia. The Developer eventually persuaded Halsey Minor ("Mr. Minor") and Minor Family Hotels, LLC ("the Debtor") to provide equity investment that would partially finance the project. Mr. Minor is the sole owner of the Debtor. (The Debtor and Mr. Minor are referred to herein collectively as "the Owners"). In March of 2008, the Lender agreed to loan the Debtor $23.69 million to build the Hotel. The Debtor executed a promissory note ("the Promissory Note") in connection with the loan. Mr. Minor agreed to guarantee the Promissory Note. Clancy and Theys Construction Co. ("the General Contractor") was employed to manage the construction of the Hotel. In early 2009, a dispute developed in stages that eventually involved the Owners, the Lender, the Developer, the General Contractor and some of the subcontractors.

On February 11, 2009, the Owners filed a complaint initiating a suit ("the Virginia Action") against the Developer in the Circuit Court for the City of Charlottesville in the Commonwealth of Virginia ("the Charlottesville Circuit Court"). The complaint alleged causes

of action sounding in fraud and breach of contract.[1] On February 19, 2010, the Owners filed a motion to join the Lender in the Virginia Action. The Lender was joined. The Charlottesville Circuit Court subsequently ordered the Debtor and the Developer to go to arbitration. The arbitration resulted in a judgment in favor of the Debtor and against the Developer in the amount of approximately $7.9 million for damages, attorneys' fees and costs.

On February 24, 2010, the Lender filed a complaint initiating an action ("The Georgia Action") against the Owners in the Fulton County Court. The complaint alleged that the Debtor had breached its obligation under the Promissory Note and that Mr. Minor had breached his obligation arising from his guarantee concerning the Promissory Note. The Owners answered and counterclaimed against the Lenders alleging the same causes of action that they had alleged in the Virginia Action. The Owners also filed a third party complaint against the Developer, alleging the same causes of action as in the Virginia Action.

Subsequently, the General Contractor filed six mechanic's liens ("the Mechanic's Liens") against the Debtor. On June 5, 2009, the General Contractor filed a complaint in the Charlottesville Circuit Court against the Debtor and the Lender, among others, to foreclose on the mechanic's liens ("the Virginia Lien Action"). On October 23, 2009, the General Contractor amended the complaint. On November 25, 2009, the Debtor counterclaimed against the General Contractor for Breach of Contract.

Subsequently several subcontractors brought separate actions against the Debtor based on their mechanic's liens. Those actions were consolidated with the Virginia Lien Action. The resulting lawsuit is referred to herein as "the Consolidated Mechanic's Lien Action.

---

[1] The causes of action were for Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, Breach of Fiduciary Duty, Fraud in the Inducement, Fraud and Constructive Fraud.

On September 1, 2010, the Debtor filed the above-styled chapter 11 petition. The Debtor then removed the Virginia Action and the Georgia Action, to this Court.[2] The Debtor also removed that part of the Consolidated Mechanic's Lien Action that concerned the General Contractor to this Court, but did not remove that part of that action that concerned the subcontractors. The General Contractor subsequently filed a notice of removal of that part of the Consolidated Mechanic's Lien Action that had not been previously removed.[3]

The Lender filed a motion to remand the Georgia Action to the Fulton County Court. This Court granted that motion by order and the Debtor filed a notice of appeal from the order granting the motion to remand. The Debtor filed a motion to stay the Remand Order pending appeal. That motion is now before this Court.

*Discussion*

A motion for a stay of a judgment, order, or decree of a bankruptcy judge must ordinarily be presented to the bankruptcy judge in the first instance. The bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code during the pendency of an appeal on such terms as will protect the rights of all parties in interest. Fed.R.Bankr.P. 8005. The Debtor, as the party seeking a stay of the bankruptcy court's order pending appeal, bears the burden of proof on each element by a preponderance of the evidence. In re Wire Rope Corp. Of America, Inc., 302 B.R. 646, 648 (Bankr. W.D. Mo. 2003). A motion for a stay pending appeal

---

[2] The removed Virginia Action was designated adversary proceeding no. 10-06108 by the Clerk of the Court. The removed Georgia Action was designated adversary proceeding no. 10-06112 by the Clerk of the Court.

[3] That part of the Consolidated Liens Action that was removed by the Debtor was designated adversary proceeding no. 10-06109 by the Clerk of the Court. That part of the Consolidated Liens Action that was removed by the General Contractor was designated adversary proceeding no. 10-06118 by the Clerk of the Court.

under Rule 8005 is an extraordinary remedy and requires a substantial showing on the part of the movant. In re F.G. Metals, Inc., 390 B.R. 467, 471 (Bankr. M.D. Fla. 2008). Also see In re Lickman, 301 B.R. 739 (Bankr. M.D. Fla. 2003). Because the burden of meeting this standard is a heavy one, more commonly stay requests will not meet this standard and will be denied. 11 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2904, p. 503-05 (2nd Ed. 1995).

A party seeking a stay pending appeal pursuant to the bankruptcy rules bears the burden of establishing (1) the likelihood of success on the merits of the appeal, (2) that the movant will suffer irreparable injury if the stay is denied, (3) that no substantial harm will be suffered by the other parties if the stay is granted, and (4) that no harm to the public interest, if it is implicated, will be caused by granting the stay. See, e.g., In re Section 20 Land Broup, Ltd., 252 B.R. 819 (Bankr. M.D. Fla. 2000).

The balancing of these four factors is plainly a case-by-case task that does not submit to any rigid set of rules. Hilton v. Braunskill, 481 U.S. 770, 777, 107 S.Ct. 2113, 2119-20 (1987). The factors do not function as "prerequisites" but as "interrelated considerations that must be balanced together." Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog, 945 F.2d 150, 153 (6th Cir. 1991). The weight accorded each factor is not necessarily the same, Standard Havens Products v. Gencor Industries, 897 F.2d 511, 512 (Fed.Cir.1990), and no one factor is determinative, Constructors Ass'n of Western Pennsylvania v. Kreps, 573 F.2d 811, 815 (3rd Cir.1978).

These four factors are identical to those that determine whether a preliminary injunction should issue. The Fourth Circuit Court of Appeals has set forth the proper methodology that

courts are to use when employing the four factors to ascertain whether a preliminary injunction should issue. See Blackwelder Furniture Co. v. Seilig Manufacturing Co., 550 F.2d 189, 196 (4th Cir.1977). This methodology has been adopted by a United States District Court for the Western District of Virginia in determining whether to stay an order of a bankruptcy court granting a creditor relief from the automatic stay. See In re Skinner, 202 B.R. 868, 868-869 (W.D.Va. 1996). The Court in Skinner summarized the approach:

> . . . [T]he court [is] first to determine whether the plaintiff will suffer irreparable injury if he does not receive injunctive relief. After this inquiry has been resolved, the court must pass upon the likelihood of harm to the defendant should an injunction issue and then weigh this harm against the countervailing injury to the plaintiff without injunctive relief. If the balance of harms clearly favors the plaintiff, the court need only find that the plaintiff has raised substantial and serious questions on the merits for preliminary relief to issue; if the potential harm to the parties is more evenly balanced, the plaintiff must make a stronger showing of success on the merits. The final factor for the court to consider is the public interest.

Skinner, 202 B.R. at 868-869 (citations omitted).

A. Irreparable Harm to the Debtor.

The first step is to determine whether the Debtor will suffer irreparable injury if the stay pending appeal is denied. In evaluating the harm that will occur if the stay is not granted, courts generally look to three factors: (1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided. State of Ohio ex rel. Celebrezze v. Nuclear Regulatory Com'n, 812 F.2d 288, 290 (6th Cir. 19867) (citing Cuomo v. U.S. Nuclear Regulatory Com'n, 772 F.2d 972, 977 (D.C.Cir. 1985)).

The first matter to be considered is the substantiality of the injury alleged by the Debtor.

In evaluating the degree of injury, it is important to remember that "[t]he key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Sampson v. Murray, 415 U.S. 61, 90, 94 S.Ct. 937, 953, 39 L.Ed.2d 166 (1974) (quoting Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n, 259 F.2d 921, 925 (D.C.Cir.1958) (concerning injunctive relief from an action brought by probationary federal employee for declaration that her discharge was invalid)).

The Debtor argues that it will be forced to litigate on two fronts if the appeal becomes moot, which will occur if the stay is not granted and the Fulton County Court proceeds to judgment before the United States District Court considers the appeal of the Remand Order. The Debtor argues that it will be harmed by the additional cost of litigating on two fronts. The argument as framed appears to consist of the "money, time and energy" referenced in Sampson.

Even if such is not the case, however, the evidence does not indicate that the Debtor will incur greater costs if the three removed actions are not consolidated, a conclusion that is reached by examining the difference in costs to the Debtor if the actions are consolidated and if they are not. If the appeal is mooted and the Debtor is, consequently, not permitted to consolidate the adversary proceedings, and the Consolidated Mechanic's Lien Action is heard as one action, then it will be required to continue litigation on two fronts: (1) the Georgia Action and the (2) Consolidated Mechanic's Lien Action.

The resolution of the Georgia Action will resolve the Virginia Action. The parties

informed this Court that the Charlottesville Circuit Court will not be able to set the matter for trial before 2012. The Fulton County Court had previously set the matter before it down for trial on November 1, 2010. Clearly the matter would be heard before the Fulton County Court first. Just as clearly, any judgment rendered by the Fulton County Court would, under the doctrines of collateral estoppel and res judicata, resolve virtually all of the remaining causes of action before the Charlottesville Circuit Court. It is, consequently, concluded that the Debtor will not have to defend the Virginia Action if the Georgia Action is remanded and the Debtor's motion to consolidate in this Court is denied. That will leave only the Consolidated Mechanic's Lien Action for the Debtor to prosecute, whether that occurs in this Court or in the Charlottesville Circuit Court.

If the Debtor's motion to consolidate is granted as requested, then it will still be required to litigate on two fronts. This follows from the fact that the motion to consolidate does not seek to consolidate that part of the Consolidated Mechanic's Lien Action that the Debtor chose not to remove. The first litigation that the Debtor would be required to prosecute would include the Virginia Action, the Georgia Action and that part of the Consolidated Mechanic's Lien Action that the Debtor chose to remove to this Court. The second litigation would be that part of the Consolidated Mechanic's Lien Action that the Debtor chose not to remove to this Court. It appears that in either event, whether the appeal is mooted or the Remand Motion is affirmed, the Debtor will be required to litigate on two fronts.

Further, it appears to this Court that the cost of prosecuting a consolidated action in this court would be no less than, and quite probably more than, that incurred by the Debtor if it were to prosecute the Georgia Action and the Consolidated Mechanic's Lien Action separately. As

noted, the resolution of the Georgia Action will eliminate virtually all of the cost of the Virginia Litigation.

The Debtor's argument is greatly weakened by one overriding fact and that is that the Georgia Litigation is on the doorstep of resolution. After eighteen months and millions of dollars in legal fees, that litigation would have been fully resolved within a few months. Any consolidated hearing before this Court, on the other hand, could not be resolved within that time frame for two reasons. First, this Court would need time to familiarize itself with the facts, the issues and the arguments. One would not expect that this Court to become as familiar with this case as the Fulton County Court in less than that time frame. Second, and most importantly, it is clear to this Court that the parties, or at least one of them, does not want this dispute to go to resolution. This Court anticipates that it could be as much as six months or a year before a resolution could be reached. The Debtor's argument that it is seeking to reduce the costs of this dispute, or these disputes, rings hollow in light of the fact that it filed this bankruptcy petition on the eve of the resolution of most of the disputes surrounding the construction of the Hotel.

Finally, the argument that the Debtor can save costs by litigating the Georgia Action in this court is purely speculative. The irreparable harm alleged when seeking a stay pending appeal must be both certain and immediate, rather than speculative or theoretical. See Wisconsin Gas Co. v. Federal Energy Regul. Comm'n, 758 F.2d 669, 674 (D.C.Cir.1985). There is no evidence that the consolidation will reduce the Debtors' cost of litigation. And, as noted, this Court believes that they will actually be greater.

The second issue is the probability of the harm. The likelihood of mootness in this case is small. The Debtor, in its memorandum on this matter, states that it will seek an expedited

hearing on the appeal of the Remand Order.  At the hearing on this matter the Debtor indicated that it expected that the appeal would be resolved within two or three weeks.  The Fulton County Court has removed the arguments on cross-motions for summary judgment, previously set for October 21-22, 2010, from that Court's calendar.  To render judgment mooting the Debtor's appeal, the Fulton County Court would have to set the summary judgment motions for argument, consider those arguments, and render an opinion, all within three weeks.   This Court doubts very much that the Fulton County Court could accomplish the task in light of the scorched-earth manner in which the parties, or perhaps one of them, have chosen to litigate this matter.

The Court need not consider the adequacy of the evidence, as the facts alleged by the Debtor have been accepted as true.  It is concluded that the Debtor does not face irreparable harm if the stay is denied.

B. Harm to the Lender.

The Debtor must also demonstrate that no substantial harm will be suffered by the other parties if the stay is granted.  The only harm that the Lender will face is the delay in the resolution of this dispute.  This harm is not significant, but it is at least as great as the harm that could come to the Debtor if the stay is not granted.

C.  Likelihood of Success on Appeal.

The requisite showing of likelihood of success is inversely proportional to the amount of irreparable injury that the appellant will suffer absent the stay.  In re Adelphia Communications Corp., 361 B.R. 337, 349 (S.D.N.Y. 2007).    Also see In re Cujas, 376 B.R. 480 (Bankr. E.D.Pa. 2007) (the likelihood of success on the merits that a party must demonstrate in order to obtain stay of bankruptcy court's order pending appeal, is measured on a sliding scale, that varies

depending upon degree of injury that party will suffer without stay; the more decidedly the balance of harm tips in movant's favor, the less the likelihood of success which he must demonstrate in order to obtain stay pending appeal).

As noted, the Debtor has failed to demonstrate that it will experience irreparable harm if the motion for stay pending appeal is denied. Accordingly, the Debtor is required to show that its likelihood of prevailing on the merits on appeal from the Remand Order is quite high.

In order to determine the likelihood of the Debtor's success on the merits, the bankruptcy court must consider both its own reasoning under which the motion to remand was granted and the standard under which the United States District Court will address the appeal. A party may remove a claim or cause of action to district court, and by reference to the bankruptcy court, if such court has jurisdiction of such claim or cause of action under 28 U.S.C. § 1334. The court to which such claim or cause of action is removed may remand such claim on any equitable grounds. 28 U.S.C. § 1452. This "any equitable ground" remand standard is an unusually broad grant of authority. It subsumes and reaches beyond all of the reasons for remand under nonbankruptcy removal statutes. See Chambers v. Marathon Home Loans (In re Marathon Home Loans), 96 B.R. 296, 299-300 (E.D.Cal.1989).

The standard on appeal from an order to remand is abuse of discretion. 230 B.R. 414, 416 (9th Cir. B.A.P. 1999). Also see Bethlahmy v. Kuhlman ( In re ACI-HDT Supply Co.), 205 B.R. 231, 234 (9th Cir. B.A.P. 1997). Cf. In re Robbins, 964 F.2d 342 (4th Cir. 1992) (a decision to lift the automatic stay under 11 U.S.C. § 362(a) is within the discretion of the bankruptcy judge and such a decision may be overturned on appeal only for abuse), and New River Coal Land Co. v. Ruffner Bros., 165 F. 881, 885-886 (4th Cir. 1908) (a District Court sitting as a court

in bankruptcy has exclusive power to determine whether a suit pending in a state court should be stayed, and the discretion of the judge will not be reviewed by an appellate court unless it appears to have been abused). Although the decision to remand a matter to a state court is one committed to the discretion of the bankruptcy court, the factors to be considered by the bankruptcy court in reaching its decision are matters of law, which the United States District Court reviews de novo. Skinner, 202 B.R. 867 at 869.

Courts weigh twelve factors in determining whether to invoke discretionary abstention. See, e.g., Eastport Assoc. v. City of Los Angeles, 935 F.2d 1071, 1075 (9th Cir. 1991). The twelve factors are "(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention [or remand], (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted 'core' proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties." See Eastport, 935 F.2d at 1075-1076. The "list serves to provide an intellectual matrix to guide the judge who considers abstention [or remand] . . ." Franklin, 179 B.R. at page 928. While all factors should be considered, the exercise is one of legal analysis,

not accounting. A factor that is important in one case may be irrelevant in another. A factor that is of little consequence in one case may be dispositive in another.

In granting the Lender's motion to remand, this Court considered the twelve factors. The most important factors in this case were the first, second and fourth factors. The first factor is the effect on the efficient administration of the bankruptcy estate if the motion to remand is denied. This Court concluded that the bankruptcy estate would be more efficiently administered if the Georgia Action was remanded and the Consolidated Mechanic's Liens Action was administered separately. This conclusion was based on the fact that the Georgia Action is nearing its end and that this Court would be required to expend duplicate judicial resources in order to reach the same point in the litigation. The conclusion is based on what this Court believes to be undisputed and overwhelming facts. The parties have actively prosecuted the Georgia Action for more than eighteen months. The Fulton County Court has ruled on ten discovery motions, held four separate status conferences and entered three case management orders. The Debtor alone has expended more than $5 million in legal fees in the three actions. The Lender has expended more than $3 million in legal fees in the three actions. The Debtor has attached more than 2,700 pages of Exhibits to its notice of removal. Argument on dispositive motions had been set to be heard before the Fulton County Court on October 20-21, 2010, less than two months after the date that the Debtor filed its petition. The trial in that Court was set for November 1, 2010, exactly two months after the date that the Debtor filed its petition. This Court concluded that the Georgia Action was on the doorstep of resolution.

This Court also concluded that it could not bring the matter to resolution nearly so soon. The litigation would, in many regards, begin anew. This conclusion was based on the fact that

the parties, or at least one of them, would file motions in this court that would further delay the resolution of this matter and the fact that it would take time for this Court to become as familiar with the dispute as the Fulton County Court. This Court anticipates that the United States District Court would reach a similar conclusion regarding this factor.

The second factor concerns the extent to which state or federal law predominates over bankruptcy issues. In this case, all causes of action are based on state law,[4] which counsels strongly for remand. This Court concluded that the second factor weighs heavily in favor of remand.

The Debtor argued, and argues, that it intends to file a motion to subordinate the claims of certain creditors under 11 U.S.C. § 510 as a part of the consolidated actions in this Court and that that cause of action is not a state court matter. This Court concluded that the issue of subordination constitutes a comparatively small part of the dispute between the parties and that remand would not prevent the Debtor from raising the issue before this court once the Georgia Action and Mechanic's Lien Action are resolved.[5] The Debtor argues that this Court failed to make any findings of fact supporting the determination that the Debtor's claim for subordination constitute a small part of the dispute. First, the Court found facts that support the extent to which the Georgia Action has consumed the litigation to this point. They include eighteen months of litigation, millions and millions of dollars in legal fees, and more than 2,700 pages in documents that the Debtor considers relevant. A motion for subordination would not consume nearly the

---

[4] The parties disagree on whether Virginia law or Georgia law controls their dispute. This disagreement is not relevant to the motion to remand before this Court.

[5] A motion for subordination of a claim under Section 510 initiates a proceeding that arises under title 11. As such, the Fulton County Court does not have jurisdiction to hear any such motion.

14

legal or judicial resources incurred to date and that will be incurred in the future. Further, the Debtor provided no evidence on which the Court might measure the extent to which legal and judicial resources would be consumed in the prosecution of a motion to subordinate claims.

This Court also held that the fourth factor, the presence of a related proceeding in state court or another bankruptcy court counsels for remand. As noted, the Georgia Action was commenced more than eighteen months ago.

The Debtor argues that this Court has misinterpreted this factor, because there will always be another related proceeding if there is a motion to remand. It is true that there will always be another proceeding when there is a removal order and a subsequent motion to remand. However, the factor is one that is taken from a list that is used by courts to determine whether abstention is correct. When a court considers abstention, there may or may not be a related proceeding pending in another court. The fact that there will always be a related proceeding when a motion to remand is at issue is not a reason to ignore the factor. It simply means that the debtor may have to provide more evidence if the motion is one to remand than when the motion is one to abstain from a matter for which there is no related proceeding.

This Court also found that the fifth, seventh, tenth and twelfth factors counsel for remand.

The fifth factor concerns whether there is another basis for federal jurisdiction other than 28 U.S.C § 1334. In this case there is none. The Debtor could not bring the causes of action that are asserted in the Georgia Action in this Court but for the filing of the bankruptcy petition. Accordingly, this Court held that this factor counsels for remand.

The Debtor argues that this Court has diversity jurisdiction over the removed Georgia Action. Diversity jurisdiction is vested in United States District Courts, not Bankruptcy Courts,

under 28 U.S.C. § 1332.  Nor can a District Court refer a matter over which it has diversity jurisdiction to a Bankruptcy Court.

> This Court has no authority to exercise supplemental jurisdiction to hear this claim. Torres, 367 B.R. at 481. The language of 28 U.S.C. §§ 1334 and 157 clearly limits the matters that may be referred by the district court to the bankruptcy court to those arising under, arising in and related to title 11.  Enron Corp. v. Citigroup. Inc. (In re Enron Corp.), 353 B.R. 51, 59 (Bankr.S.D.N.Y.2006); see also Goldstein v. Marine Midland Bank, N.A. (In re Goldstein), 201 B.R. 1, 7 (Bankr.D.Me.1996) (supplemental jurisdiction is not encompassed in § 157(a), which was drafted by Congress as a narrow, restrictive "vessel through which jurisdiction may be passed to the bankruptcy courts") (citing Boyajian v. DeLuca (In re Remington Dev. Group, Inc.), 180 B.R. 365, 372-373 (Bankr.D.R.I.1995)); In re Torres, 367 B.R. at 482 ("[t]he district court could no more refer its supplemental jurisdiction than it could refer its copyright, criminal or diversity jurisdiction") (quoting Masterwear Corp. v. Rubin Baum Levin Constant & Friedman (In re Masterwear Corp.), 241 B.R. 511, 517 n. 6 (Bankr.S.D.N.Y.1999)). [The Debtor's] defamation claim must therefore be dismissed for lack of subject matter jurisdiction.

In re Russell, 378 B.R. 735, 739 (Bankr. E.D.N.Y. 2007).  The argument that this Court would otherwise have jurisdiction under 28 U.S.C. § 1332 is without merit.

The seventh factor is the substance, rather than the form, of the asserted core proceeding.  This Court concluded that even if the Adversary Proceeding were to be transformed into a core proceeding by the filing of a proof of claim or proofs of claim, the substance of those claims would continue to be based on state law.

This Court held that the tenth factor, the likelihood that bringing the proceeding to the bankruptcy court involves forum shopping, was either neutral or mildly favored remand.  Given the fact that the Debtor waited eighteen months to remove the Georgia Action and given that that action was on the eve of trial when the Debtor filed its petition, it would not be surprising if the United States District Court found this to be a very significant factor counseling for remand.

The Debtor also argues that this Court failed to consider the "first-filed rule" in considering the issue of forum shopping.  The Debtor argued that this Court should consider the

16

fact that it filed its complaint in the Virginia Action before the Lender filed its complaint in the Georgia Action. This Court observed that was an issue for the Georgia Court to consider. In response, the Debtor now argues that this Court should apply the first-filed rule and stay the Georgia Action. The rule is not applicable. The first-filed rule only applies to two cases filed in separate federal courts. See, e.g., AmSouth Bank v. Dale, 386 F.3d 763, 791 (6th Cir. 2004). The first-filed rule is not applicable. The argument is without merit.

This Court also held that the twelfth factor, the presence in the proceeding of non-debtor parties, counsels for remand.

This Court found that the third, eighth, ninth and eleventh factors to have little or no bearing on the motion to remand. Only the sixth factor, the legal proximity of the instant case to the parent proceeding would counsel for denying the motion for remand. It is, however, far from sufficient to overcome the weight of argument for remand.

The Debtor asserts that the Court did not consider two factors: (1) the inefficiencies and resulting costs that the Debtor will face if it forced to litigate the disputes in two fora; and (2) the possibility of inconsistent and irreconcilable results. The argument that the remand will result in inefficiencies and costs to the Debtor was essentially considered in conjunction with the first of the twelve factors. The most efficient method of administering the bankruptcy estate should result in the least cost to the parties. Additionally, the relative costs to the Debtors, given remand *vel non*, were discussed herein in the discussion concerning the substantiality of the injury alleged to the Debtor above. The argument that remand might result in inconsistent results is an concern that will be addressed by the doctrine of res judicata (claim preclusion) and collateral estoppel (issue preclusion).

The Debtor asserts that, under <u>Quackenbush v. Allstate Ins. Co.</u>, 517 U.S. 706, 116 S.Ct. 1712 (1996), this court does not have the power to remand the Georgia Action. That opinion holds that "federal courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary." <u>Quackenbush</u>, 517 U.S. at 731. <u>Quackenbush</u>, however, concerned a remand order that effectively put the litigants out of court and surrendered a federal suit to a state court. In this case, the Debtor is not being put out of court nor is this court remanding a federal suit to state court. The Remand Order properly issued pursuant to 28 U.S.C. § 1452(b) which permits bankruptcy courts to remand a removed action on any equitable ground. The Debtor has made no argument that <u>Quackenbush</u> prohibits remand in this case.

It is concluded that the likelihood of the Debtor prevailing on its appeal of the Remand Order is quite low given the facts in this case, the factors to be considered, and the standard on appeal.

D. Harm to the Public Interest.

This Court can find no harm to the public interest that would result by denying the motion to stay pending appeal.

*Conclusion*

The motion for stay pending appeal will be denied. The potential harm to the Debtor is quite low as is the probability of its occurrence. Accordingly, the Debtor is faced with demonstrating that its likelihood of success on the merits is relatively high. It has not met that burden.

An appropriate order shall issue.

Upon entry of this memorandum the Clerk shall forward copies of this memorandum to Benjamin Webb King, Esq., Kurt Ramlo, Esq., John H. Maddock, III, Esq., Lee Danielson, and the United States trustee.

Entered on this 12th day of October, 2010.

/s/ William E. Anderson
William E. Anderson
United States Bankruptcy Judge